IN THE UNITED STATES DISTRICT COURT
FOR THE NOTRHTERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| GLOBAL ARCHERY PRODUCTS, INC.<br><br>Plaintiff,<br><br>v.<br><br>JORDAN GWYTHER d/b/a LARPING.ORG and UPSHOT ARROWS,<br><br>Defendant. | Civil Action No.: 1:15-cv-297-JVB-SLC |

## BRIEF OF AMICUS CURIAE ELECTRONIC FRONTIER FOUNDATION IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION

The Electronic Frontier Foundation ("EFF") respectfully submits this amicus brief in opposition to plaintiff Global Archery Products, Inc.'s ("Global Archery") Motion for a Temporary Restraining Order, Preliminary Injunction, and Hearing (Docket No. 23).

### INTEREST OF AMICI

The Electronic Frontier Foundation ("EFF") is a member-supported, non-profit civil liberties organization that has worked to protect free speech, privacy rights, and innovation in the online world for over 25 years. With more than 26,000 active donors and dues-paying members nationwide, EFF represents the interests of technology users in both court cases and broader policy debates surrounding the application of law in the digital age. EFF is especially concerned about laws and regulations that threaten free

1

expression over the Internet. EFF views the protections provided by the First Amendment as vital to the promotion of a robustly democratic society. As part of its mission, EFF frequently serves as *amicus* in First Amendment cases involving online speech.

## INTRODUCTION

This case, like many before this Court, involves two parties with highly divergent views about the merits of the underlying litigation. The Defendant believes the case is without merit and could negatively impact the broader community. The Plaintiff believes its claims are entirely meritorious, litigated for a legitimate purpose, and further only its valid legal interests. In this respect, the case is like many, many others before the Federal Courts. What is unique about this case, however, is that one party wishes to use the power of the court to silence its opponent. Under the guise of purported false advertising claims, Plaintiff Global Archery asks this Court to enjoin the Defendant's criticism of its lawsuit. But the public has a strong First Amendment interest in learning about this and other patent cases. The proposed injunction is plainly an unconstitutional prior restraint on speech and must be rejected.

## FACTUAL BACKGROUND

In this litigation, Global Archery brings a variety of claims against Defendant Jordan Gwyther. These include patent claims, trademark claims, and state law claims for tortious interference. *See* Compl. (Docket No. 1). The patent claims relate to foam-tipped arrows sold by Gwyther. In public statements—on online forums including YouTube and GoFundMe—Gwyther has publicly criticized the patent claims brought against him. *See* Docket No. 24, Exhibit B. Gwyther has argued that the patent claims against him lack

2

merit because he sells arrows that were invented and patented in Germany more than a year before Global Archery filed its patent application. *See id.* at 6.

Seeking to shut down this criticism, Global Archery has filed a motion asking the court to enter a temporary restraining order and preliminary injunction. *See* Pl.'s Mot. for TRO, Prelim. Inj. & Hr'g (Docket No. 23) (hereafter "PI Motion"). In its supporting brief, Global Archery protests that Gwyther's criticism has caused the public to hold it "in complete disdain." *See* Pl.'s Br. Supp. TRO, Prelim. Inj. & Hr'g 11 (Docket No. 24) (hereafter "PI Brief").

The proposed injunction is worded broadly to reach any kind of statement by Gwyther. Global Archery asks the Court to enter an order prohibiting Gwyther from issuing "any press releases, advertisements, letters, promotional materials, articles, *and oral or other written statements* including posts on social media sites such as Gofundme, YouTube, Facebook, and Twitter" that characterize this lawsuit in ways that it disagrees with. *See* PI Motion at 1-3 (emphasis added). Global Archery asks the Court to enjoin Gwyther from issuing any statement that this case "is being prosecuted to interfere with the general public's ability to engage in live action role playing (LARP)," any statement that this action "is being prosecuted to interfere with the general public's ability to engage in LARP archery," and any statement that might "imply" this case "is being prosecuted to assert patent rights as to any and all foam tipped arrows." *Id.* at 1-2. Global Archery also asks the Court to issue sweeping orders prohibiting any "false or misleading description or statement of fact with respect to Global" (without any limitation as to topic), any "misleading description" regarding "this lawsuit," and any "use" of Global Archery's ARCHERY TAG trademark. *Id.* at 2.

3

In its supporting brief, Global Archery argues that Gwyther's discussion of this lawsuit has been "misleading" because Gwyther misrepresents the scope of the patent claims, fails to discuss every cause of action brought against him, and fails to specify the exact amount of money he has made from sales of foam-tipped arrows. *See* PI Brief at 4-5. Global Archery states that its proposed injunction would not impact the public interest at all. It asserts that "[n]o other parties other than Global and Gwyther will be affected" by its proposed injunction. PI Brief at 12. Global Archery did not address, or even mention, the First Amendment issues raised by its proposed injunction.

## ARGUMENT

### I.   Global Archery Seeks an Order That Would Be a Classic Prior Restraint Prohibited by the First Amendment.

A prior restraint on free speech is "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). In this case, Global Archery seeks a broad order prohibiting Gwyther from making purportedly misleading statements about a variety of topics. Because such an order would prevent Gwyther from speaking in the first instance rather than imposing a penalty after he has spoken, it is a classic prior restraint. *Alexander v. United States*, 509 U.S. 544, 550 (1993) ("The term prior restraint is used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.' . . . [O]rders that actually forbid speech activities . . . are classic examples of prior restraints.") (citation omitted, emphasis in original); *Cooper v. Dillon*, 403 F.3d 1208, 1215 (11th Cir. 2005) ("Classic prior restraints have involved judge-issued injunctions against the publication of certain information.").

4

The proponent of a prior restraint bears a heavy burden to overcome that presumption by demonstrating justification for such a restraint. *Nebraska Press Ass'n*, 427 U.S. at 558; *see also Landmark Communic'ns, Inc. v. Virginia*, 435 U.S. 829, 849 (1978) (need for prior restraint must be "manifestly overwhelming") (Stewart, J., concurring). Prior restraints are therefore "accorded the most exacting scrutiny." *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 102 (1979). The fact that Gwyther is a party before the Court does not alter the fact that the proposed order would be a prior restraint subject to this exacting scrutiny. *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 579 (5th Cir. 2005) (holding order prohibiting defendant Singh from communicating with plaintiff's employees and counsel "was a prior restraint limiting Singh's first amendment rights, and because the injunction *order is not supported by exceptional circumstances*, it is an unconstitutional restraint on Singh's free speech rights") (emphasis added); *see also Marceaux v. Lafayette City-Par. Consol. Gov't*, 731 F.3d 488, 492 (5th Cir. 2013) ("Court orders restricting trial participants' speech are evaluated under the prior restraint doctrine … ."); *CBS, Inc. v. Young*, 522 F.2d 234, 239 (6th Cir. 1975) (a restraining order directed to parties, counsel, or their agents "constitutes a prior direct restraint upon freedom of expression").

To pass constitutional muster, prior restraints must be necessary to further a governmental interest of the highest magnitude. *See Nebraska Press Ass'n*, 427 U.S. at 562. The prior restraint will be necessary only if: (1) the harm to the governmental interest will definitely occur; (2) the harm will be irreparable; (3) no alternative exists for preventing the harm; and (4) the prior restraint will actually prevent the harm. *See id.* at 562-67. Injunctions that are designed to prevent commercial harm, such as the one sought

5

here, will almost never pass this test. First, a commercial harm to a single enterprise is not typically the "harm of a highest magnitude" to which a prior restraint can be applied. *See Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) (rejecting an individual's invasion of privacy claim as insufficiently grave so as to justify a prior restraint). Second, commercial harms are not irreparable because they can be addressed by an award of damages at the conclusion of the litigation. *See E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 703 (7th Cir. 2005) (monetary harm does not constitute irreparable harm); *Metro. Opera Ass'n v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001) (denying injunction against criticism of business, even on assumption statements were false). In its motion and opening briefing, Global Archery did not even address the First Amendment, let alone establish the exceptional circumstances necessary for a prior restraint on speech.

## II. Global Archery Cannot Avoid First Amendment Scrutiny by Mischaracterizing Defendant's Criticism of It As Commercial Speech.

In denying its consent to the filing of this amicus brief, Global Archery informed EFF that its motion for a preliminary injunction did not raise First Amendment issues because it concerned commercial speech. Global Archery could not be more wrong. First, the speech at issue in not commercial speech. Second, even if it were, it would not thereby lose all First Amendment protection.

As the Supreme Court recently emphasized, commercial speech is defined narrowly for First Amendment purposes. *See Harris v. Quinn*, 134 S. Ct. 2618, 2639 (2014) ("Our precedents define commercial speech as 'speech that does no more than propose a commercial transaction.'") (quoting *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001)). Global Archery seeks an injunction that unquestionably sweeps

6

beyond commercial speech. For example, it asks the Court to enjoin any "misleading" statements about it, regardless of the forum or context. PI Motion at 2.

The mere fact that Gwyther's statements happen to be about litigation between competitors does not thereby transform that speech into commercial speech or false advertising.[1] If that were so, Courts would quickly become embroiled in collateral litigation about parties' statements about litigation. Contrary to Global Archery's suggestion, prior restraints may not be sustained merely because customers express disapproval of a business. *See Org. for a Better Austin*, 402 U.S. at 419 ("No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices in pamphlets or leaflets warrants use of the injunctive power of a court."); *see also J.Q. Office Equip. of Omaha, Inc. v. Sullivan*, 230 Neb. 397 (1988).

The fact that Gwyther solicited donations does not exclude his speech from First Amendment protection. *See Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150 (2002) (striking down ordinance regulating activities of solicitors and canvassers); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781 (1988) (applying strict scrutiny to, and striking down, regulations imposed on charitable solicitation). Global Archery similarly ignores the fact that supporting litigation is *itself* protected First Amendment activity. *See Nat'l Ass'n for Advancement of Colored People*

---

[1] In its brief, Global Archery suggests that Gwyther's statements were intended to "induce the public" to "make sales of his products." PI Brief at 4. But it offers no evidence whatsoever for this assertion. It is clear that Global Archery's true grievance is that Gwyther has criticized its conduct in this litigation. *See id.* at 11 (suggesting the "harm" to Global Archery is that the public holds it in lower regard because of its conduct in this lawsuit).

7

*v. Button*, 371 U.S. 415 (1963). Even if Gwyther's speech did fit the Supreme Court's narrow definition of commercial speech, it would not thereby lose all First Amendment protection. *See City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 426-27 (1993) (regulation of commercial speech subject to First Amendment scrutiny and must be closely tied to asserted governmental interest); *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 n.7 (1980) (commercial speech is not excluded from First Amendment protection). The Court would still need to consider whether this case raised exceptional circumstances sufficient to support a prior restraint. *See N.Y. Magazine v. Metro. Transp. Auth.*, 136 F.3d 123, 131 (2d Cir. 1998); *Desert Outdoor Advert., Inc. v. City of Moreno Valley*, 103 F.3d 814, 818-19 (9th Cir. 1996).

Global Archery is similarly misguided in its view of its trademark rights. It asks this Court to enjoin any "use" of its ARCHERY TAG trademark. PI Motion at 2. But competitors and consumers are entitled to make use of trademarks when discussing and criticizing corporations. *See, e.g., Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 806-08 (9th Cir. 2003); *Koch Indus., Inc. v. Does*, No. 2:10CV1275DAK, 2011 WL 1775765 (D. Utah May 9, 2011). In this case, Gwyther has "used" Global Archery's trademark when discussing the details and significance of this case. *See* Docket 24, Ex B at 2 (claiming that plaintiff wishes for the "foam tipped arrow to be used only for the purpose of Archery Tag"). While Global Archery disputes the factual accuracy of these statements, that does not make the statements trademark infringement. Rather, the trademark was simply being used in a comment about this lawsuit. This is classic nominative fair use. *See CPC Int'l, Inc. v. Skippy Inc.*, 214 F.3d 456, 463 (4th Cir. 2000) (where trademark "is used as part of editorial and historical commentary ... it is a

8

protected form of expression"); *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 306 (9th Cir. 1992) (nominative fair use protects use of marks for the "purposes of comparison, criticism [or] point of reference"). Global Archery's attempt to transform a squabble about the importance of this litigation into a collateral trademark dispute is contrary to both the Lanham Act and the First Amendment.

### III. Patent Claims Often Raise Issues of Major Public Importance and Should Be Subject to Debate and Scrutiny.

Global Archery is simply wrong when it states that no one other than the parties has an interest in its proposed injunction. The public has a strong First Amendment interest in learning about this case and hearing the Defendant's views. *See Apple, Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1220 (Fed. Cir. 2013) (public has interest in understanding court proceedings); *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("[T]he Constitution protects the right to receive information and ideas.").

Patent claims in particular can impact the public. For example, by suing Gwyther for patent infringement, Global Archery must also contend that all of Gwyther's customers are infringers. *See* 35 U.S.C. § 271 (defining patent infringement as "whoever without authority makes, *uses*, offers to sell, or sells any patented invention") (emphasis added). Similarly, if Global Archery is successful in this case, it could later pursue patent infringement claims against Gwyther's supplier and any other retailers that resells the same arrows. While Global Archery contends that Gwyther exaggerates the public significance of this case, it cannot be disputed that the case has *some* impact on the public and is of public interest.[2]

---

[2] Global Archery argues that Gwyther mislead the public by discussing *only* the patent claims in this suit. *See* PI Brief at 8-9. But there is no reason to allow a party to dictate what claims its opponent, and the public, focus on when discussing litigation. It is no

More generally, this case raises important public policy questions regarding patent quality and litigation. Gwyther has claimed that the asserted patents should never have issued and that the potential cost of defending this suit vastly exceeds his revenue from sales of the accused products. As such, his statements are right at the center of a major public debate about the patent system. Governments, stakeholders, and the public are currently debating how to best implement our patent system. *See* Brian T. Yeh, Cong. Research Serv., R42668, An Overview of the "Patent Trolls" Debate (2013).[3] Much of this debate focuses on patent quality. *See, e.g.*, Manny Schecter, *The Importance of US Patent Quality*, The Hill, Mar. 25, 2015.[4] The public debate also concerns the extraordinary expense of patent litigation and the pressure this can place on defendants to settle even weak patent claims. *See, e.g.*, Jim Kerstetter, *How Much Is That Patent Lawsuit Going To Cost You?*, CNET, Apr. 5, 2012.[5] As an active participant in this discussion, EFF has a strong interest in hearing the stories of patent defendants such as Gwyther. Furthermore, the public has a strong interest in learning about this case and considering its place in the broader patent policy debate.

## **CONCLUSION**

---

surprise that the patent claims are the focus of debate here given the public interest in patent cases. It would be a strange rule indeed that required parties to list every single claim asserted against them whenever publicly discussing litigation. The Court should decline Global Archery's invitation to micromanage the debate about this litigation.

[3] Available at: http://www.fas.org/sgp/crs/misc/R42668.pdf

[4] Available at: http://thehill.com/blogs/congress-blog/technology/236804-the-importance-of-us-patent-quality

[5] Available at: http://www.cnet.com/news/how-much-is-that-patent-lawsuit-going-to-cost-you/

As much as Global Archery may wish for it to be so, it is not this Court's job to shelter litigants from criticism. The proposed injunction is an unconstitutional prior restraint that would trample on both the Defendant's right to speak and the public's right to hear. For the these reasons, *amicus curiae* EFF respectfully asks that the Court deny the Plaintiff's motion for an preliminary injunction.

February 18, 2016

Respectfully submitted,

EILBACHER FLETCHER, LLP

*/s/ James P. Fenton*

James P. Fenton (#6808-02)
803 South Calhoun Street, 4th Floor
Fort Wayne, IN  46802
Tel:  (260) 425-9777
Fax: (260) 424-9177

Attorneys for *Amicus Curiae*
ELECTRONIC FRONTIER
FOUNDATION

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2016, a true and correct copy of the foregoing was filed with this court using this courts CM/ECF system, which will serve notice on the attorneys of record in this case.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: February 18, 2016                    By:  /s/ James P. Fenton
                                                                                     James P. Fenton

*Counsel for Amicus Curiae*
Electronic Frontier Foundation